# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re

FERNISA L. PARKER,

    Debtor.
_____

FERNISA L. PARKER,

    Plaintiff,

v.

PIONEER CREDIT COMPANY
OF ALABAMA, INC. d/b/a
FIRST SOUTHEAST ACCEPTANCE
CORPORATION,

    Defendant.

Case No. 05-12674
Chapter 13

Adv. Proc. No. 06-01139

## MEMORANDUM OPINION

In this adversary proceeding, the plaintiff alleges that the defendant has willfully violated the automatic stay of 11 U.S.C. § 362 and seeks actual damages, punitive damages, attorney fees and costs, and declaratory relief voiding a state court judgment. The matter came on for trial on May 9, 2007. There, the plaintiff was represented by her counsel, Michael D. Brock and David G. Poston, and the defendant was represented by its counsel, Thadius W. Morgan, Jr.

### Jurisdiction

In this action, the court's jurisdiction derives from 28 U.S.C. § 1334 and from the United States District Court for this district's order referring title 11 matters to the Bankruptcy Court. Further, this action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) thereby extending the court's jurisdiction to the entry of a final order or judgment.

Facts

On October 14, 2005, Fernisia L. Parker filed a chapter 13 petition for relief in this court. In the schedules accompanying that petition, Parker listed the defendant, First Southeast Acceptance Corporation (hereinafter "First Southeast"), as a creditor whose debt was secured by a 1995 Chevrolet Impala.

Parker's chapter 13 plan provided for the surrender of that vehicle to First Southeast. On December 8, 2005, Parker and First Southeast filed a consent motion (Doc. #10) seeking relief from stay to permit First Southeast "to repossess and liquidate or otherwise proceed against the following property securing the debt of the Debtor(s) to Creditor: **1995 Chevrolet Impala VIN#1G1BL52P9SR140367**." *See* Doc. #10 (emphasis in original). In response to the parties agreement, this court on December 29, 2005, entered a consent order (Doc. #11) terminating the stay "to allow 1st South East Acceptance Corporation to enforce its lien on the 1995 Chevrolet Impala described in the motion."

Parker's chapter 13 plan was confirmed on January 23, 2006. The confirmed plan provided for Parker's surrender of the vehicle to First Southeast.

Despite the court's December 29, 2005 order terminating the stay, on March 23, 2006, First Southeast filed a motion seeking relief from stay. Therein, it alleged that Parker had refused to surrender the 1995 Chevrolet, and thereby had committed a fraud upon the court. In the concluding paragraph, the pray for relief, First Southeast requests that the stay be terminated to allow it to file suit in state court against the debtor.

On April 27, 2006, the court entered an order (Doc. #22) providing, *inter alia*, that the stay with respect to the "creditor, to permit enforcement of a lien against the property of the estate or of the debtor described in the motion, is TERMINATED."[1]

---

[1] Pursuant to this court's local rule 4001-1, the April 27, 2006 order entered without an actual hearing when the debtor did not file an objection to the motion within the requisite time.

On May 11, 2006, First Southeast filed a complaint against Parker and her two cosigners in the District Court of Coffee County, Alabama (No. DV2006-88) seeking a money judgment. Law enforcement officers attempted to serve the state court complaint on Parker but were unsuccessful in doing so on at least two occasions. Parker, upon learning that the police were looking for her, became distraught fearing that she was about to be arrested. Both Parker and her mother testified that Parker's fear manifested itself in sleeplessness, loss of appetite, nervousness, and withdrawal from her two minor children. That emotional distress continued for over three weeks.

On June 19, 2006, default judgment in the Coffee County suit entered in favor of First Southeast, and pursuant to that judgment, First Southeast served Parker's employer with Process of Garnishment in an attempt to garnish Parker's wages. No monies were withheld, however, as a result of the garnishment.

Parker filed this adversary proceeding on July 14, 2006, and immediately moved to enjoin First Southeast's garnishment of her wages (Doc. #2). Following a hearing on the application for preliminary injunction, Bankruptcy Judge William R. Sawyer entered an order (Doc. #7) enjoining First Southeast from further prosecuting the Coffee County, Alabama civil action and ordering it to recall any wage garnishment process or proceeding directed against Parker. The court wrote:

> The automatic stay was modified to permit Pioneer Credit [First Southeast] to repossess the Impala but the automatic stay was not further modified, notwithstanding the fact that Pioneer Credit has specifically requested to proceed in State Court against the Debtor. The April 27, 2006, Order did not grant all of the relief requested and Pioneer Credit did not move the Court to amend its order.
>
> Pioneer Credit contends that it has been defrauded and that the Debtor has wilfully misled the Court. Even if that is so, and the court understands that the Debtor disputes Pioneer Credit's allegations, Pioneer Credit may not violate the automatic stay. Pioneer Credit has any number of remedies available to it.

3

However, it may not violate the automatic stay simply because it claims that the Debtor has committed a fraud.

Preliminary Injunction, Doc. #7, July 19, 2006 (Sawyer, J.).

Law

Those who willfully violate the stay are liable for the debtor's actual damages, including costs and attorney fees. Further, willful violators, in some circumstances, may be assessed punitive damages. 11 U.S.C. § 362(k)(1) provides as follows:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Court of Appeals for this Circuit, while acknowledging that the term "willfulness" varies depending upon the context, has held that "willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986); *see Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Other Circuit Courts have found a "willful" violation of the automatic stay when the violator knew of the stay and intentionally committed the violative act, regardless of any specific intent to violate the stay. *See Price v. United States*, 42 F.3d 1068, 1071 (7th Cir. 1994) *cited with approval in Jove Engineering,* 92 F.3d at 1555; *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds,* 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995).

At the conclusion of the trial in this case, the court announced its finding that First Southeast by suing the debtor in State court, had willfully violated the automatic stay. The resulting default judgment was void. *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982) ("Actions taken in violation of the automatic stay are void and without effect."). Although the stay had been terminated to permit First Southeast to enforce its *in rem* rights in its collateral, the debtor's car, the stay had not been terminated to permit First Southeast to pursue the debtor *in personam*. First

Southeast acted intentionally in filing suit against Parker, and that act was in violation of the automatic stay. A specific intent to violate the stay is not required. Therefore, the stay violation here was a willful one.[2]

Having found that First Southeast willfully violated the stay, the court turns to the issue of damages. Parker claims actual damages as a result of emotional injury and as a result of her attorneys' fees.

Parker testified that she was placed in fear by the police officer's attempts to serve her with the First Southeast suit believing that the police purpose was to effect her arrest. The court is mindful that a debtor who suffers from only fleeting emotional injury cannot recover for purely emotional injuries under § 362(k). *See Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880-81 (7th Cir. 2001). Yet in this case, Parker's emotional injuries in the form of sleeplessness, loss of appetite, nervousness, and withdrawal persisted for over three weeks. The court finds that Parkers actual damage for emotional injury is $500.

On June 4, 2007, Parker's counsel filed an application for compensation (Doc. #38) wherein they seek $12,791.45 for representing Parker in this matter ($12,398.40 fees and $393.05 expense). The application is supported by a chronological itemization of services rendered, time spent, and the hourly rate applied to those services. The court, after a review of the application, finds the fee reasonable and awards Parker actual damages for attorneys' fee totaling $12,791.45.

---

[2] First Southeast argues that Judge Sawyer's order of April 27, 2006 granted stay relief beyond allowing the mere enforcement of its security interest in the collateral. That argument, however, is untenable.

11 U.S.C. § 1306 delineates the property that comprises a chapter 13 debtor's estate. That property includes a debtor's postpetition earnings. *See* 11 U.S.C. § 1306(a)(2). Hence, First Southeast's suit for money judgment and garnishment of the debtor's wages were not just acts against the debtor but against the debtor's bankruptcy estate in the form of her postpetition wages. Clearly, the April 27, 2006 order did not terminate the stay to this extent.

Further, First Southeast sued not only the debtor but two guarantors of the indebtedness. Those guarantors are also protected under the codebtor stay of 11 U.S.C. § 1301, and First Southeast failed to obtain relief from the codebtor stay.

5

Finally, Parker seeks punitive damages which, pursuant to the statute, are allowed only in "appropriate circumstances." 11 U.S.C. § 362(k). The Bankruptcy Code, however, does not specify what constitutes appropriate circumstances for the imposition of punitive damages, leaving it to the sound discretion of the bankruptcy court. *Smith v. Homes Today, Inc. (In re Smith)*, 296 B.R. 46, 56 (Bankr. M.D. Ala. 2003)(Sawyer, J.). A number of standards have been employed by the courts that have considered the issue.

Some courts look to the "maliciousness or bad faith" of the creditor as a guide. Others use the creditor's "arrogant defiance of federal law" as the standard. Others, yet, have used "egregious, vindictive, or intentional misconduct" of the creditor as the standard. Still others have employed a multi-factor approach consisting of 1) the nature of the creditor's conduct; 2) the creditor's ability to pay; 3) the creditor's motives; and 4) provocation by the debtor. *Green Tree Servicing, LLC. v. Taylor*, 2007 WL 1009768, *6 (S.D. W. Va. March 30, 2007) (noting the above standards used by courts to determine whether circumstances are appropriate for a punitive damage award).

Under any of these standards, however, it is clear that "punitive damages usually require more than mere willful violation of the automatic stay." *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).

While it is clear that First Southeast willfully committed an act that was in violation of the stay, the court is not convinced that it did so maliciously. Rather, it appears to the court that First Southeast acted with the mistaken belief that the stay, both *in rem* and *in personam*, had been terminated. It follows that punitive damages are not appropriate in this case.

Conclusion

For the foregoing reasons, judgment in this adversary proceeding will enter for the plaintiff and against the defendant. Pursuant to Fed. R. Bankr. Proc. 9021, an order of judgment, consonant with this memorandum opinion, will enter separately.

6

Done this the 28th day of June, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Michael D. Brock, Plaintiff's Attorney
David G. Poston, Plaintiff's Attorney
Thadius W. Morgan, Jr., Defendant's Attorney